**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>JERRY REEVES<br><br>Appellant | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 2159 MDA 2012 |

Appeal from the PCRA Order of November 26, 2012
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0003869-2009

BEFORE: BOWES, J., WECHT, J., and PLATT, J.*

MEMORANDUM BY WECHT, J.: **FILED NOVEMBER 07, 2013**

Jerry Reeves ("Appellant") appeals from the November 26, 2012 order dismissing his first petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We adopt the thorough opinions issued by the PCRA court, and we affirm.

In 2009, Appellant was charged with second-degree murder, robbery, tampering with or fabricating physical evidence, and carrying a concealed firearm without a license.[1] The charges arose from a May 25, 2006 robbery-murder that occurred at the City Gas and Diesel convenience store in Harrisburg, Pennsylvania. In an opinion addressing Appellant's direct

---

* Retired Senior Judge assigned to the Superior Court.

1 18 Pa.C.S. §§ 2502(b), 3701, 4910, and 6106, respectively.

appeal, the trial court summarized the facts that were presented at

Appellant's jury trial as follows:

> On May 25, 2006, after making sure any customers had left the premises, Appellant entered the City Gas and Diesel convenience store between 12:30 a.m. and 1:00 a.m.  He walked up to the clerk's counter and pulled a semiautomatic pistol from the front of his pants.  He pointed it through the open, bullet proof counter window at the on duty clerk, Hitender Thakur.  Appellant demanded money from the cash register.  Hitender refused.  There was a brief struggle and Appellant fired the weapon, hitting Hitender in the upper right chest.  Hitender remained on his feet and attempted to remove the money from the cash register, but fell to the ground seconds later.  Hitender died almost immediately from a gunshot wound to the chest, which pierced his heart and punctured his aorta.  Appellant jumped over the counter and emptied the cash register.  He then fled the store.
>
> That night had not been the first time Appellant was at City Gas and Diesel.  In fact, by his own admission, Appellant had been to the store numerous times and was familiar with the clerks on duty.  Nishant Rana, another clerk at the store and Hitender's friend, testified that Appellant came to the store almost every day.  Occasionally, Appellant did odd jobs for the clerks in exchange for Black and Mild cigars.  Following the night of Hitender's death, Nishant never saw Appellant at the store again.
>
> State Trooper Curtis Salak, who was a patrol officer with the Harrisburg City Police at the time, was the first to arrive on the scene following the shooting.  He was dispatched to the convenience store.  As he approached he observed a white male in the street flagging him down.  A brief conversation with the white male alerted Trooper Salak that someone inside the store had been shot.  He parked his vehicle, secured the scene and entered the store.  There he observed Hitender lying on the floor behind the counter.  He jumped through the open, bulletproof window at the counter, and attempted to render aid.  Hitender was lying on his back with his eyes open and did not appear to be breathing.  His chest and shirt were covered with blood, and there was a pool of blood on the floor around him.  Other officers began arriving on the scene.  Trooper Salak called for medical

assistance. They then opened the secured door which led behind the counter to give EMS access to Hitender. He also spoke with Sansay Ghanur, a friend of Hitender's who arrived at the store at approximately 1:10 a.m., immediately after Hitender was shot.

William Kimmick, a forensic investigator with the Harrisburg Police, arrived on the scene at approximately 1:20 a.m. By that time, other officers were already on the scene and EMS had departed. Investigator Kimmick testified that Investigator Kunkle,[[2]] who is no longer with the Harrisburg Police Department, arrived at the scene at approximately 2:20 a.m. or 2:30 a.m. Investigator Kunkle took photographs of the crime scene. They collected a 20 dollar bill from the floor under the register as well as the video surveillance tape from the store. Investigator Kimmick testified that the cash register drawer was open and empty except for some coins. He observed blood on the cash register and on the floor directly beneath the cash register. They processed the counter, window and door to the clerk's area for fingerprints. However, Karen Lyda, another forensics expert with the Harrisburg Police Department, testified that none of the prints that were collected matched Appellant's fingerprints.

Lyda was also present for Hitender's autopsy. There, she collected the bullet from Hitender's body which she sent to the Pennsylvania State Police for processing. There, Corporal David A. Krumbine, an expert in firearms and tool markings, determined that the bullet was a .25 caliber. He testified that it was most likely fired from a semiautomatic pistol.

Police also identified Derrick Small, another individual seen on the video tape in the store prior to the shooting. Xavier Hendry, a witness for the Commonwealth, testified that on the night of Hitender's death he had driven Small to the City Gas and Diesel. He also identified a picture of Small. Detective Christopher Krokos, who was familiar with Small from past interactions, identified Small in the surveillance video that was played for the jury. He was seen leaving the store moments before Appellant entered.

---

[2] Investigator Kunkle's first name does not appear in the notes of testimony.

The Commonwealth also presented testimony regarding Appellant's confession to police as well as the conflicting statements he made to officers and detectives prior to making his confession. Appellant's first contact with police occurred at the end of May, 2006. Shortly after the homicide, Appellant had a conversation with Officer Derrick Fenton of the Harrisburg City Police. During that conversation, Appellant told Officer Fenton that he had information about the City Gas and Diesel homicide, and that he could provide the name of the individual responsible. Officer Fenton testified that Appellant stated he was a witness to the crime. Appellant claimed he was standing across the street at the time of the shooting, and told Officer Fenton that he saw an individual named Jermaine Taylor enter the store and rob it. Appellant further claimed that Taylor exited the store following the shooting and got into a dark colored car with tinted windows and left the area. He claimed that there were other people sitting in the car. When Detective Krokos later spoke with Appellant regarding the homicide on May 30, 2006, Appellant changed his story. Appellant told Detective Krokos that he did not know anything about the City Gas and Diesel homicide. Further, Appellant claimed that he told Officer Fenton that he was a witness because he was under arrest at the time and he was hoping that police would let him go to be with his family over the Memorial Day holiday if he provided them with information. Detective Krokos further testified that Appellant admitted to fabricating the story and that, to his knowledge, the individual named Jermaine Taylor did not actually exist. Appellant also told Detective Krokos that he had been lying when he stated he saw the shooting. However, Appellant did tell the detective that he had heard the shooting from his house. Detective Krokos typed Appellant's statement from that day and Appellant signed the back of it.

Appellant spoke to police about the homicide again on July 29, 2009. At that time, Detective Donald Heffner, Detective Hector Baez and Detective Krokos were present for the interview. The detectives read Appellant his ***Miranda*** rights and confirmed that he was not under the influence of any drugs or alcohol. Further, they determined that he was not suffering from any medical problems at the time of the interview. Detective Heffner and Detective Baez both testified that in the early stages of the interview, Appellant claimed he was a witness to the homicide and that he was sitting across the street on a porch when Ferred Ray and Joseph Baldwin and an unknown third male arrive[d] at

the City Gas and Diesel. Appellant told the detectives that Baldwin and the unknown male entered the store, while Ray remained outside. Appellant stated that he heard a gunshot, and that the two men exited the store. Appellant told the detectives that the three got into a car and fled the scene. As the interview progressed, Appellant told the detectives that he was actually right in front of the store with Ray, Baldwin and the unidentified male. He stated that Ray was the individual that walked into the store. Appellant told the detectives that, when he heard the gunshot, he ran from the scene and did not know what happened to the other three men. Detective Heffner testified:

> During the course of the conversation, where he was saying he was closer and closer to the store. He was putting himself physically closer to the store he became more serious. At one point right before he said that he had committed this crime he began to tremble and he began to cry. . . . It came to a point where we actually said we are going to interview these other guys you just named. What are they going to say about it? That is kind of where he broke down and he said, no, I did this.

[Appellant] confessed to the homicide, stating that it was an accident and that he needed the money. Following the initial confession, Appellant gave his consent for the detectives to [record] his statement. The audio-recording of the confession was played for the jury.

Appellant took the stand and stated that he did not rob or shoot Hitender. He stated he was picked up by police at approximately 2:30 a.m on July 29, 2009. Appellant testified that, at the time he spoke with detectives later that day, he had various health problems. Specifically, Appellant stated he was light headed and was vomiting up blood at the time. However, none of the detectives observed any of Appellant's alleged medical issues. Further, on the audio-tape of the confession, Appellant stated he was not suffering from any medical problems. Appellant further claimed that one of the reasons he confessed to the homicide was because detectives told him that they would take him to the hospital only if he confessed. Appellant also claimed that, on top of his other medical issues, he was also suffering from a hangover from the night before.

* * *

> Besides his alleged medical problems, Appellant also testified that another reason he spoke with police was because the detectives promised to help him out by letting his girlfriend go free. She had been picked up at the same time Appellant was arrested.
>
> Despite his contentions that police fed him details of the homicide, Appellant provided them to the police during his taped confession. Appellant also stated that he did not rob or murder Hitender and that he was in Baltimore at the time of the crime. However, Appellant was unable to state the exact timeframe in which he was in Baltimore or explain how he learned the details of the homicide upon his alleged return to Harrisburg. Further, James Thornton, a rebuttal witness for the Commonwealth, testified that he spoke with Appellant regarding his Baltimore alibi while at Dauphin County Prison:
>
>> Well, I happened to be sitting there, and it was maybe four individuals sitting around where I was and they were talking, and one individual was saying they almost got me, man. And I called for some help. He needs an alibi. So the individual told me that he had a friend in Baltimore he was going to give a thousand dollars and get him to say he was down there.
>
> Thornton identified the individual speaking as Appellant.

Trial Court Opinion ("T.C.O."), 11/16/2010, at 2-9 (citations to notes of testimony and footnotes omitted).

On June 23, 2010, the jury found Appellant guilty of all of the aforementioned charges, save the tampering with or fabricating physical evidence charge, which was withdrawn by the Commonwealth prior to jury deliberations. Thereafter, Appellant was sentenced to life imprisonment on the murder count, a concurrent five to ten-year term of imprisonment on the robbery count, and a concurrent one to two-year term of imprisonment on the firearm count. On July 1, 2011, in an unpublished memorandum, we

affirmed the judgment of sentence. ***See Commonwealth v. Reeves***, 1193 MDA 2010 (Pa. Super. July 1, 2011) (unpublished memorandum).

On July 30, 2012, Appellant filed a PCRA petition, wherein Appellant alleged that trial counsel was ineffective. In support of this overall claim, Appellant raised the following issues:

1. Evidence of viable alternative suspects was not presented to the jury at the time of trial. Kai Anderson murdered Hitender Thakur, not [Appellant].
2. At trial, Trial Counsel failed to employ readily available and admissible expert testimony in the well-known and well-studied psychological phenomenon of a false confession.
3. [Appellant] could not have committed the murder as he was in Baltimore. Trial Counsel's failure to exercise minimal due diligence precluded evidence of an alibi to be fully presented before the jury.
4. Alibi rebuttal evidence was produced into the record and placed before the trier of fact that could not and should not have been entered into evidence.
5. Trial Counsel failed to give proper notice of alibi concerning Terry Reeves and as such his testimony was precluded.

PCRA petition, 7/30/2012, at 6, 16, 25-27. On September 28, 2012, the Commonwealth filed a response to Appellant's PCRA petition.

On October 10, 2012, by written order, the PCRA court notified Appellant of its intent to dismiss the PCRA petition without a hearing within twenty days, pursuant to Pa.R.Crim.P. 907. The PCRA court simultaneously issued a memorandum opinion in support of its notice order. On October 29, 2012, Appellant filed a response to the PCRA court's notice of intent to dismiss. On November 26, 2012, the PCRA court issued a second

memorandum opinion, wherein the court addressed the objections raised by Appellant in his response to the PCRA court's notice of intent to dismiss. The PCRA court then entered an order dismissing Appellant's PCRA petition.

On December 7, 2012, Appellant filed a notice of appeal. In response, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 2, 2013, Appellant timely complied. Finally, on January 8, 2013, the PCRA court issued a Pa.R.A.P. 1925(a) opinion, wherein the court adopted its October 10, 2012 and its November 26, 2012 opinions as its rationale for dismissing Appellant's PCRA petition.

Appellant raises the following claim for our review:

> A PCRA claim may be denied a hearing where the claims set forth are patently frivolous and the issues have no trace of support either in the record or from other evidence. Here there is evidence of exculpatory value, on the record, to Jerry Reeves that need to be developed. Did the trial court improperly deny Jerry Reeves's PCRA petition without the benefit of an evidentiary hearing?

Brief for Appellant at 4. In support of this overarching claim, Appellant focuses his argument on three main contentions: (1) trial counsel was ineffective for failing to present "viable alternative suspects at trial," ***id.*** at 11; (2) trial counsel was ineffective for failing to present evidence of the "false confession phenomenon" at trial, ***id.*** at 18; and (3) trial counsel was ineffective for failing properly to file notice of certain alibi evidence and failing to present that evidence at trial. ***Id.*** at 21.

We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether the court's order is otherwise free of legal error. ***Commonwealth v. Faulk***, 21 A.3d 1196, 1199 (Pa. Super. 2011) (citation omitted). It is well-settled that "a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1040 (Pa. Super. 2007) (citing Pa.R.Crim.P. 907(1); ***Commonwealth v. Hardcastle,*** 701 A.2d 541 (Pa. 1997)).

To succeed on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Steele***, 961 A.2d 786, 796-97 (Pa. 2008). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Jones***, 815 A.2d 598, 611 (Pa. 2002).

We have conducted an independent review of the certified record, the briefs of the parties, the reasoning set forth by the PCRA court in its October 10, 2012 and November 26, 2012 opinions, and the legal authorities upon

which the PCRA court based its analyses and cited above. Having done so, we conclude that the PCRA court's findings are supported by the evidence of record, and that the court's application of the law to those facts was in all respects free of legal error. Consequently, we adopt both of the PCRA court's opinions in full, and we affirm. A copy of each of the PCRA court's opinions is attached hereto for ease of reference.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2013